In the Matter of TRANSGAS ENERGY SYSTEMS, LLC, Petitioner, v NEW YORK STATE BOARD ON ELECTRIC GENERATION SITING AND ENVIRONMENT et al., Respondents. [887 NYS2d 99]—

Proceeding pursuant to CPLR article 78 to review a determination of the New York State Board on Electric Generation Siting and the Environment dated July 15, 2008, which denied the petitioner's application for a rehearing of a determination dated March 21, 2008 dismissing the petitioner's application for a certificate of environmental compatibility and public need. Motion by the respondent City of New York to dismiss the petition insofar as asserted against it for failure to timely join it as a necessary party.

Ordered that the motion of the respondent City of New York to dismiss the petition insofar as asserted against it for failure to timely join it as a necessary party is denied; and it is further,

Adjudged that the determination is confirmed, the petition is denied, and the proceeding is dismissed on the merits, without costs or disbursements.

On December 24, 2002 the petitioner TransGas Energy Systems, LLC (hereinafter TransGas) submitted an application to the respondent New York State Board on Electric Generation Siting and the Environment (hereinafter the Board), pursuant to former article X of the Public Service Law to obtain a certificate of environmental compatibility and public need to construct and operate a 1,110-megawatt electric and steam cogeneration plant (hereinafter the power plant). TransGas proposed to construct the power plant on an eight-acre site located on the Greenpoint-Williamsburg waterfront in Brooklyn.

The project required the construction of a 6.4-mile pipeline under the streets of the respondent City of New York to transport water to the power plant. Further, in order to sell steam to the Consolidated Edison Company of New York (hereinafter Con Edison), as TransGas proposed, TransGas had to construct a steam main interconnection, which would originate from the power plant and run under the East River to Con Edison's steam facilities in Manhattan.

The City, and the respondents Brooklyn Borough President, Brooklyn Community Board One, and Greenpoint-Williamsburg Waterfront Task Force, opposed TransGas's application on the ground, inter alia, that the power plant was incompatible with an approved plan to rezone and redevelop the Greenpoint-Williamsburg waterfront for residential, commercial, and light manufacturing uses, and to create extensive public access to the waterfront. The centerpiece of this plan was the creation of a 28-acre park on the waterfront, which would include the eight-acre site on which TransGas proposed to build the power plant.

After an evidentiary hearing on TransGas's application held before designated hearing examiners, the examiners recommended to the Board that the application be denied for failure to mitigate adverse environmental impacts. In an effort to mitigate the identified adverse impacts, TransGas amended its application by proposing to construct the power plant, initially contemplated as an above-ground facility, underground. Without holding an additional hearing on the amendment, the Board decided that it did not have the statutory authority to grant TransGas permission to lay its water and steam pipes under public streets and through the public property under the East River, and, concomitantly, that TransGas was required to obtain revocable consents from the City, as provided by New York City Charter § 364, in order to route its pipes through the City's

public property. The Board thus held the matter in abeyance to allow TransGas to obtain such consent from the City. TransGas refused to attempt to obtain that consent, asserting that the City was precluded by statute from requiring it to obtain revocable consents, and that the Board had authority to grant such permission. TransGas also advanced a third configuration of its proposed power plant, which would not require the use of municipal property.

The Board ultimately dismissed TransGas's application to build an underground power plant on the ground that TransGas had not obtained permission to route the necessary water and steam pipes through the municipal property. The Board also denied TransGas's application to construct the third configuration of the power plant on the merits, finding, inter alia, that the power plant's underground oil storage tank would be incompatible with public health and safety and the City's Zoning Resolution.

TransGas sought a rehearing of the Board's determination to deny its application to construct an underground facility, and of the Board's discrete factual finding with respect to the oil storage tank. However, the Board denied TransGas's application for a rehearing.

In this proceeding pursuant to CPLR article 78 commenced in this Court, TransGas seeks review of the Board's denial of its application for a rehearing. In its first cause of action, TransGas challenges, as arbitrary, capricious, and an abuse of discretion, the Board's determination to dismiss its application for a certificate to construct an underground power plant on the ground that it failed to obtain revocable consents from the City to lay pipes in municipal property. In its second cause of action, TransGas seeks remittal to the Board for a further evidentiary hearing as to the merits of its proposed underground power plant, asserting that the failure to hold an additional hearing on the proposal was arbitrary, capricious, and an abuse of discretion. The third cause of action was withdrawn. In its fourth cause of action, TransGas seeks to annul the finding by the Board pertaining to the oil storage tank.

The City, joined as a party to this proceeding after the expiration of the statute of limitations, moves to dismiss the petition insofar as asserted against it for failure to timely join it as a necessary party. Although dismissal would be required if the City was a necessary party to this proceeding (*see Windy Ridge Farm v Assessor of Town of Shandaken*, 11 NY3d 725, 727 [2008]; *Matter of Artrip v Incorporated Vil. of Piermont*, 267 AD2d 457 [1999]), contrary to the contentions of the City and

the Board, the City is not a necessary party under CPLR 1001 (a).

The City and the Board argue that the City's interest in TransGas's first cause of action is akin to that of a landowner whose real property rights will be affected by the judgment. However, in contrast to the cases relied upon by the City and the Board (*see e.g. Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals*, 5 NY3d 452, 456-457 [2005]), the purpose of this proceeding is not to adjudicate the City's property rights, and no property rights, including the right to make a particular use of a specific property, will be determined by this Court. Rather, to decide TransGas's first cause of action, this Court is called upon to interpret Public Service Law article X to determine whether it was intended to preclude a municipality from applying local laws concerning use of municipal property, and to vest authority to permit use of municipal property in the Board. Although more immediate, the City's interest in this Court's interpretation of article X is no different from that of any other local government.

The City also is not a necessary party to the second and fourth causes of action. Although the City may be incidentally or indirectly affected by a determination of this Court that further hearings are required as to the merits of the underground power plant proposal, including the issue regarding the oil storage tank, the instant proceeding was brought to review the Board's determination of TransGas's article X application, not to adjudicate any rights of the City. The City is not indispensable to the Board's adjudication of article X applications, as the City is only a permissive party to the proceedings before the Board (*see* Public Service Law former § 166 [1] [h]; *see also* Governor's Mem in Support, *Bill Jacket*, L 1972, ch 385, 1972 NY Legis Ann, at 249). There is no reason, with respect to the present proceeding, to depart from the Legislature's assessment of the nature of the City's interest in an article X application (*see Boston & Me. R.R. v Delaware & Hudson Co.*, 268 NY 382, 389 [1935] [where a party's "only interest in defeating the action" was "indirect," the party was not a necessary party to the action]; *cf. Matter of Gill v New York State Racing & Wagering Bd.*, 50 AD3d 494, 496 [2008]). Accordingly, we deny the City's motion to dismiss the proceeding as time-barred, and reach the merits of the petition.

In its first cause of action, TransGas takes issue with the Board's determination that the City was not precluded by Public Service Law former § 172 from requiring TransGas to obtain

revocable consents to use public property, and that the Board was not authorized to grant such consent. The issue is one of first impression.

Since "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent," no deference is owed to the Board's determination of the issue (*Lorillard Tobacco Co. v Roth*, 99 NY2d 316, 322 [2003]; *see Matter of Suffolk Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd.*, 11 NY3d 559, 567 [2008]; *Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y.*, 7 NY3d 451, 455 [2006]; *Matter of Commonwealth of Mass. v New York State Bd. on Elec. Generation Siting & Envt.*, 197 AD2d 97, 104 n 4 [1994]; *cf. Matter of UPROSE v Power Auth. of State of N.Y.*, 285 AD2d 603, 606 [2001] [deference was appropriate as to the Board's interpretation of the term "generating capacity"]). Nonetheless, considering the question de novo, we find that the Board's conclusion was correct.

TransGas seeks a license from the Board to occupy the City's public property (*see County of Nassau v South Farmingdale Water Dist.*, 62 AD2d 380, 384 [1978], *affd* 46 NY2d 794 [1978] [observing that the "right to install water lines is only a license or privilege and not the grant of an interest in or appurtenant to real property"]). Despite the general delegation of power to municipalities to regulate highways and other public property within their boundaries (*see* NY Const, art IX, § 2 [c] [6]; Municipal Home Rule Law § 10 [1] [ii] [a] [6]; *see also* General City Law § 20 [10]), the Legislature "retains ultimate control" over such property and may, through the enactment of general laws, restrict a municipality's authority in this regard (*New York State Pub. Empls. Fedn., AFL-CIO v City of Albany*, 72 NY2d 96, 101 [1988]; *see County of Orange v Public Serv. Commn. of State of N.Y.*, 39 AD2d 311, 317 [1972], *affd* 31 NY2d 843 [1972]).

TransGas contends that the Legislature delegated to the Board the Legislature's authority to limit the City's control over public property, and to permit TransGas to use that property by enacting Public Service Law former § 172, which provides: "[n]otwithstanding any other provision of law, no . . . municipality . . . may, except as expressly authorized under [art X] by the board, require any approval, consent, permit, certificate or other condition for the construction or operation of a major electric generating facility with respect to which an application for a certificate hereunder has been filed." The mere appearance of the word "consent" in the statute is not dispositive of the issue of whether the statute precludes the City from

requiring TransGas to obtain revocable consents. Because "consent" is undefined by article X, the term's meaning must be gleaned from the context, which includes article X as a whole, and the legislative history of article X (*see State of New York v Mobil Oil Corp.*, 38 NY2d 460, 464 [1976]).

Article X is "a general law relating to matters of substantial State concern" (*Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99, 106-107 [1983]), through which law the Legislature intended to "pre-empt further regulation in the field of major . . . electric generating facility siting" (*id.* at 107 [examining art X's predecessor, Public Service Law former art VIII]). However, as an examination of the other provisions of article X and article X's legislative history reveals, the granting of a license to occupy public property is not, as TransGas suggests, "regulation in the field of [power plant] siting" (*id.* at 106). Rather, the regulatory scheme set forth in article X "provides for a comprehensive review of environmental and public interest impacts and the issuance of a certificate of environmental compatibility and public need as a precondition to the siting" of a power plant (*Matter of Citizens for Hudson Val. v New York State Bd. on Elec. Generation Siting & Envt.*, 281 AD2d 89, 92 [2001]).

Public Service Law former article VIII was enacted to replace "an uncoordinated review process [that] prevent[ed] a comprehensive public assessment of the need [for] and potential impact of a proposed" power plant and which led to delay in the construction of needed power plants due to the multiplicity of requirements from numerous local agencies (Governor's Mem in Support, Bill Jacket, L 1972, ch 385, 1972 NY Legis Ann, at 250). Thus, the Board was created to provide for an expeditious review process and "to balance, in a single proceeding, the people's need for electricity and their environmental concerns" (*Matter of Commonwealth of Mass. v New York State Bd. on Elec. Generation Siting & Envt.*, 197 AD2d at 104; *Matter of County of Suffolk v Gioia*, 96 AD2d 220, 223 [1983]).

Consonant with this purpose, article X requires certain specific findings to be made by the Board upon completing its review, which primarily concern the need for the power plant in light of the State's electricity requirements and energy planning objectives, the probable environmental impacts of the power plant, and the power plant's ability to comply with State and local laws, such as those concerning the environment and public health and safety (*see* Public Service Law former § 168 [2] [a]-[e]). The Board is not required to make any findings as to whether, in light of the competing possible uses of public rights-

of-way, public property may or should be occupied by the proposed power plant.

Furthermore, upon making its findings, the Board is ultimately authorized to "grant or deny the application as filed or to certify the [power plant] upon such terms, conditions, limitations or modifications of the construction or operation of the [power plant] as the board may deem appropriate" (Public Service Law former § 168 [2]). The Board is not expressly authorized to also grant licenses to allow the owner of a certified power plant to occupy and use the property upon which the owner seeks to construct and operate a portion of the power plant.

Accordingly, considering both the legislative history and the other provisions of article X, we conclude that the granting of a right to occupy property is not included within article X's regulatory scheme. Since Public Service Law former § 172 did not constitute a delegation to the Board of the authority to grant licenses to occupy public property, the authority remains with the City, under the delegation of power to municipalities allowing them to regulate the "public ways and public places" (General City Law § 20 [10]; see NY Const, art IX, § 2 [c] [6]; Municipal Home Rule Law § 10 [1] [ii] [a] [6]). As such, the City would not be precluded by Public Service Law former § 172 from requiring TransGas to obtain revocable consents to occupy the City's public property. Since the proposed power plant could not be built without laying pipes under the City's public property, and because TransGas has refused to seek revocable consents from the City to do so, the Board's dismissal of TransGas's application was not arbitrary, capricious, or an abuse of discretion.

In its second cause of action, TransGas asserts that the Board violated the mandate of Public Service Law former § 168 (1) by failing to hold a hearing on TransGas's amendment to its original application prior to making a determination as to the amended application. Contrary to TransGas's contention, if a decision can be rendered on an amended application based upon the record made at the evidentiary hearing held with respect to the original application, Public Service Law former § 168 (1) does not require that a further hearing be held. Since the issue regarding revocable consents was addressed during the hearing on TransGas's original application, the Board's final decision to dismiss the amended application due to TransGas's failure to obtain revocable consents was rendered "upon the record made before the presiding examiner" (Public Service Law former § 168 [1]). As such, TransGas's second cause of action must fail.

TransGas's remaining contentions are academic in light of our determination. Spolzino, J.P., Skelos, Dillon and Covello, JJ., concur.