■ In the Matter of RESIDENTS FOR RESPONSIBLE GOVERNMENT, Appellant, v ALEXANDER B. GRANNIS, as Commissioner of Environmental Conservation, et al., Respondents. (Proceeding No. 1.) In the Matter of COUNTY OF NIAGARA et al., Appellants, v ALEXANDER B. GRANNIS, as Commissioner of Environmental Conservation, et al., Respondents. (Proceeding No. 2.) [907 NYS2d 330]—

Lahtinen, J. Appeals from a judgment and order of the Supreme Court (Sackett, J.), entered May 8, 2009 in Albany County, which dismissed petitioners' applications, in two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, to review a determination of the Department of Environmental Conservation finding that the hazardous waste disposal permit modification application of respondent CWM Chemical Services, LLC was complete.

Petitioners contend that respondent Department of Environmental Conservation (hereinafter DEC) violated ECL article 27, title 11, when it issued a notice of completeness on a permit modification application pertaining to a commercial hazardous waste landfill and, furthermore, that DEC's negative declaration regarding that application was not supported by the record. Respondent CWM Chemical Services, LLC operates an active 47-acre commercial hazardous waste landfill, known as RMU-1, on property it owns in Niagara County. RMU-1 is part of CWM's 710-acre hazardous and industrial waste treatment, storage and disposal facility, which has operated since the early 1970s and includes 10 closed landfills. In 1993, following extensive review, the Industrial Hazardous Waste Facility Siting Board issued a certificate of environmental safety and public necessity for RMU-1 (see ECL 27-1105), and DEC granted CWM a permit to operate that facility (see 6 NYCRR part 373). As relevant to these appeals, the permit established a final height limitation for the landfill and provided that, when closed, the landfill must be covered with a compacted clay layer (hereinafter CCL).

In 2000, CWM commenced communication with DEC about possible modifications to its permit, including substituting a technologically superior geosynthetic clay liner (hereinafter GCL) as a final cover for RMU-1 instead of the CCL. Over the next eight years, DEC conducted investigations regarding this change and other changes sought by CWM, the agency issued numerous notices of incomplete application with requests for additional information, and received revised applications as well as scientific research reports and technical information. CWM eventually narrowed its modification application to essentially seeking to use the GCL as a final cover and, since the final cover system with the GCL would be 2½ feet whereas one using CCL would have been five feet, CWM sought to use the resulting extra 2½ feet of air space available before reaching the maximum allowable height for additional waste disposal. This would extend the operational life of RMU-1 for up to one year by making an additional 106,870 cubic yards of space available, increasing the total waste of RMU-1 by about 3%.

CWM submitted an environmental assessment form with an April 2008 permit modification application and, after DEC initially found deficiencies in the application, a revised application followed in June 2008. DEC issued a negative declaration (see ECL art 8) in September 2008 in which it noted the superior performance of the GCL cover. While DEC acknowledged in its negative declaration that there would be an increase in disposal capacity at RMU-1, it observed that there would also be a

decrease in truck traffic necessary to deliver clay for a CCL cover and that the extended operations would be substantially similar to those that had been ongoing at the site. In November 2008, DEC published a notice of complete application.* Petitioners then commenced these combined CPLR article 78 proceedings and declaratory judgment actions seeking to annul DEC's determination. Supreme Court dismissed the petitions and petitioners appeal.

We consider first petitioners' argument that DEC violated ECL article 27, title 11, by issuing a notice of complete application at a time when DEC had not yet adopted a statewide hazardous waste facility siting plan. ECL 27-1109 (6) provides that any application regarding a facility that is subject to ECL 27-1105 will not be deemed complete until DEC determines that the application is consistent with the statewide hazardous waste facility siting plan required by ECL 27-1102. Since DEC has not yet adopted an ECL 27-1102 plan, CWM's application can be complete only if it is not subject to ECL 27-1105. As is relevant here, ECL 27-1105 is applicable to "any expansion . . . of the aggregate land disposal capacity of an existing land disposal facility" (ECL 27-1105 [1] [e]). However, the statute goes on to carve out exceptions, including for "[a] facility that has been determined by [DEC] to have no significant environmental impact pursuant to article eight of this chapter" (ECL 27-1105 [2] [c]).

"Where a statute is ambiguous and its interpretation 'involves specialized "knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom," [we] defer to the administrative agency's interpretation unless irrational or unreasonable' " (*Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation*, 68 AD3d 1588, 1589 [2009], quoting *Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005], quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). The language of ECL 27-1105 inclusively applies to "any" of various facilities in the first paragraph of the statute only to be followed by numerous exceptions in the second paragraph. The statute is susceptible to more than one reasonable interpretation as to a proper reading of its first two paragraphs. Further, this statute is part of a network of statutes and statutorily authorized regulations aimed at the complex permitting, monitoring and regulating of

---

* Following a public hearing and receipt of written public comments, DEC issued the permit modification in July 2009.

commercial hazard waste landfills; an area that sufficiently implicates specialized agency knowledge and understanding of underlying operational practices such that DEC's interpretation is entitled to deference. As currently relevant, ECL 27-1105 (2) (c) provides an exception from the requirements of ECL 27-1105 for "[a] facility that has been determined by [DEC] to have no significant environmental impact pursuant to [ECL article 8]." We are unpersuaded that it was unreasonable for DEC to interpret this language as allowing an exception from ECL 27-1105 for a permit modification that the agency had examined and for which it had issued a negative declaration.

The next issue is whether DEC's determination of no significant impact is supported by the record. While petitioners do not dispute the superior quality of the GCL final cover system, they contend that DEC failed to take a hard look at the environmental impact of extending the operation of the RMU-1 for approximately one year. "Judicial review of an agency determination under [the State Environmental Quality Review Act] is limited to 'whether the agency identified the relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis for its determination' " (*Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 231-232 [2007], quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]). "It is not the province of the courts to second-guess thoughtful agency decisionmaking and, accordingly, an agency decision should be annulled only if it is arbitrary, capricious or unsupported by the evidence" (*Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d at 232; *see Akpan v Koch*, 75 NY2d 561, 570 [1990]).

Here, over the course of eight years, DEC required CWM to provide an array of reports and information regarding the effectiveness of GCL covers as well as ramifications resulting from the use of such a cover at RMU-1. In its negative declaration, DEC identified areas of environmental concern, including information regarding the superior nature of GCL covers, the resulting increase in capacity at RMU-1, the extension of the operational life of RMU-1 by approximately one year, and the similar nature of the operations during this extended time. DEC determined, and the record supports, that a GCL cover affords better protection, thus having a positive environmental impact. The agency also noted that allowing the GCL cover would decrease the truck traffic that otherwise would have been necessary to deliver clay for a CCL cover. Although truck traffic delivering waste would continue for the additional year, such

traffic was not different from what had been ongoing for many years. DEC considered and concluded that continuing the hazardous waste disposal at the site for an additional year would not have a significant impact since all activities would be substantially the same as previously approved after comprehensive evaluation during the earlier permit process. We are unpersuaded that DEC's determination is unsupported by the record or reflects an arbitrary action.

Spain, J.P., Stein, McCarthy and Garry, JJ., concur. Ordered that the judgment and order is affirmed, without costs.