■ In the Matter of ROBERT GABRIELLI et al., Respondents, v TOWN OF NEW PALTZ et al., Appellants. [984 NYS2d 468]—

Garry, J. Appeal from a judgment of the Supreme Court (Elliott III, J.), entered September 12, 2012 in Ulster County, which granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, annul a determination of respondent Town Board of the Town of New Paltz enacting Local Law No. 5 (2011) of the Town of New Paltz.

In 2005, respondent Town Board of the Town of New Paltz (hereinafter Board) enacted a local law to prevent the "despoliation and destruction of wetlands, waterbodies and watercourses." In 2007, Supreme Court (Egan Jr., J.) annulled that enactment based upon the failure to comply with General Municipal Law § 239-m. The Board thereafter undertook redrafting of the 2005 law by, among other things, designating itself as the lead agency for the purpose of the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), directing the Town Engineer to update a previously-prepared report, directing respondent Town of New Paltz Wetlands Inspector to conduct a "quality vernal pool analysis," conducting meetings, and holding public hearings upon the revised law.

In October 2011, the Board reviewed the full environmental assessment form (hereinafter EAF) that had been prepared by the Town Engineer and, in November 2011, issued a negative declaration of environmental significance under SEQRA. The Board enacted the revised law in December 2011 as Local Law No. 5 (2011) of the Town of New Paltz (hereinafter the 2011 law). Petitioners, who own real property in the Town and Village of New Paltz, thereafter commenced this combined CPLR

article 78 proceeding and action for declaratory judgment against the Board, respondent Town of New Paltz, respondent Town of New Paltz Planning Board, and various Town officials challenging the 2011 law and negative declaration on multiple grounds. Supreme Court (Elliott III, J.) annulled the 2011 law and negative declaration upon finding that respondents had failed to comply with SEQRA and that the 2011 law was unconstitutionally vague. Respondents appeal.

Initially, respondents contend that Supreme Court erred in concluding that the Board failed to take the "hard look" required by SEQRA before concluding that an environmental impact statement (hereinafter EIS) was not required. SEQRA requires an EIS when an agency action "may have a significant effect on the environment," and such an impact is presumed to be likely where, as here, a type I action is involved (ECL 8-0109 [2]; *see Matter of Frigault v Town of Richfield Planning Bd.,* 107 AD3d 1347, 1349 [2013]; 6 NYCRR 617.4 [a] [1]); however, a type I action does not, "per se, necessitate the filing of an [EIS]" (*Matter of Shop-Rite Supermarkets, Inc. v Planning Bd. of the Town of Wawarsing,* 82 AD3d 1384, 1386 [2011], *lv denied* 17 NY3d 705 [2011]; *see Matter of Gabrielli v Town of New Paltz,* 93 AD3d 923, 924 [2012], *lv denied* 19 NY3d 805 [2012]).[1] A negative declaration may be issued, obviating the need for an EIS, if the lead agency—here, the Board—determines that "no adverse environmental impacts [will result] or that the identified adverse environmental impacts will not be significant" (6 NYCRR 617.7 [a] [2]; *see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie,* 3 NY3d 508, 520 [2004]; *Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau,* 82 AD3d 1377, 1378 [2011]). Upon judicial review, we may not substitute our judgment for that of the Board, and may annul its decision "only if it is arbitrary, capricious or unsupported by the evidence" (*Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast,* 9 NY3d 219, 232 [2007]; *accord Matter of Residents for Responsible Govt. v Grannis,* 75 AD3d 963, 966 [2010], *lv denied* 16 NY3d 701 [2011]).

Before passing the negative declaration, the Board reviewed the EAF, which identified five environmental areas on which the 2011 law would have "small to moderate impact," including land, plants and animals, aesthetic resources, space and recreation and "growth and character of community or neighbor-

---

1. The Board chose to treat the 2011 law as a type I action although it believed that it was in fact an unlisted action, as it found that the 2011 law could arguably come within the purview of 6 NYCRR 617.4 (b) (2) (*see* 6 NYCRR 617.2 [ai], [ak]).

hood." As no "potentially large" impacts were identified, completion of part 3 of the EAF—in which such impacts must be analyzed in detail—was not required (*Matter of Yellow Lantern Kampground v Town of Cortlandville*, 279 AD2d 6, 11 [2000]). The Town nevertheless elected to complete part 3, in which the identified impacts were evaluated, and each was found to have either no impact or a beneficial impact. Included in the EAF were data and conclusions from the Town Engineer's updated report regarding the potential impact of the 2011 law on tax revenue and land planning, the Town's written responses to numerous public comments, and a list of properties potentially located within wetland buffer areas to be created by the proposed law. The Board also solicited input from the Town's Environmental Conservation Board and from the Department of Agriculture. As the proposed law included "quality vernal pools" (hereinafter QVPs) among the wetlands to be regulated,[2] the Town considered the Wetlands Inspector's report on the quantity and area of unregulated vernal pools in the Town. Following its review, the Board issued a negative declaration that included a detailed description of the action to be taken, reasons supporting the Board's determination, and an evaluation of the areas of relevant environmental concern, incorporating the EAF and the reports and information considered.

Petitioners contend that the identification of the area to be regulated was not sufficiently specific, thus precluding accurate assessment and rendering the Town's review inadequate. The 2011 law defines regulated areas with reference to the Town's "Wetland & Watercourse Map" (hereinafter the Town map). The Town map was prepared by the Town Engineer based upon a compilation of state and federal wetland and watercourse maps, electronic mapping resources, and data from other sources. As acknowledged in the 2011 law, the Town map delineates the approximate boundaries of the regulated areas, but, because of its scale, does not reveal the precise locations of the boundaries, which can only be accurately determined by a field survey. Notably, however, the 2011 law provides a mechanism by which property owners can determine the presence and location of regulated areas on their land, by requesting an onsite inspection, at the Town's cost, by the Wetlands Inspector. Following such inspection, a written determination must be provided within 60 days or, if delay is required because of weather or ground conditions, "as early as practicable" (Code of

---

**2.** Vernal pools are isolated, seasonal wetlands; QVPs are vernal pools that satisfy additional criteria as to size, breeding habitat and other characteristics as set forth in the 2011 law.

Town of New Paltz § 139-6 [D], as added by Local Law No. 5 [2011] of Town of New Paltz § 1).[3] Following passage of the 2011 law, the Town notified all real property owners in the Town and Village of its enactment, included a copy of the Town map with the notice, and advised owners of the availability of property inspections.

Considering the record evidence relative to the methodology employed in preparing the Town map, the expense and impracticality of alternate methods of identifying regulated areas, and the availability of Town-financed property inspections, we are unpersuaded by petitioners' contention that the Town's identification of regulated areas was insufficient to permit the environmental impact assessment required by SEQRA. Although, as petitioners argue, "strict compliance with SEQRA is required" (*Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau*, 82 AD3d at 1379), it is also true that "an agency's obligation under SEQRA must be viewed in light of a rule of reason, realizing that not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before the substantive dictates of SEQRA are satisfied" (*Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs*, 46 AD3d 979, 984 [2007], *lv denied* 10 NY3d 706 [2008] [internal quotation marks, brackets and citations omitted]; *see Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 688 [1996]). Here, the record establishes that the Board engaged in a thorough and lengthy review process, identified relevant areas of environmental concern, took the requisite hard look at these concerns, and made a reasoned and detailed elaboration of the basis for its determination—thus satisfying its obligations under SEQRA (*see* 6 NYCRR 617.7 [b]; *Matter of Frigault v Town of Richfield Planning Bd.*, 107 AD3d at 1350-1352; *Matter of Mombaccus Excavating, Inc. v Town of Rochester, N.Y.*, 89 AD3d 1209, 1211 [2011], *lv denied* 18 NY3d 808 [2012]). We, therefore, find that Supreme Court erred in annulling the 2011 law and negative declaration on this basis.

We further conclude that the 2011 law is not unconstitutionally vague. A local law is entitled to an "exceedingly strong

---

3. An amicus curiae brief submitted by Riverkeeper, Inc. lists approximately 80 municipal wetlands laws in effect in New York. According to Riverkeeper, Inc., most of these laws identify regulated areas by reference to wetlands maps that—like the Town map—do not precisely delineate the boundaries of the regulated wetlands, and impose the cost of more specific identification on individual property owners. It is asserted that the 2011 law challenged here is the only one of these enactments that provides an individualized identification to property owners free of charge.

presumption of constitutionality" that may be rebutted only by establishing its unconstitutionality beyond a reasonable doubt (*Lighthouse Shores v Town of Islip*, 41 NY2d 7, 11 [1976]; *see de St. Aubin v Flacke*, 68 NY2d 66, 76 [1986]). "[S]o long as [the 2011 law] provides persons of ordinary intellect reasonable notice of the proscribed conduct," it will withstand a constitutional challenge on vagueness grounds (*Matter of Oakwood Prop. Mgt., LLC v Town of Brunswick*, 103 AD3d 1067, 1070 [2013], *lv denied* 21 NY3d 853 [2013] [internal quotation marks and citations omitted]; *see Foss v City of Rochester*, 65 NY2d 247, 253 [1985]). As set forth above, property owners can determine whether their land is within the area regulated by the 2011 law by reviewing the Town map and, if a more precise determination is necessary, by obtaining an inspection at no cost. The Town map does not indicate the location of regulated QVPs; respondents contend that no existing maps depict these features and that they can be identified only by onsite field surveys. However, the 2011 law does include a detailed description of the characteristics of QVPs that we find sufficient to permit persons of ordinary intelligence to make a preliminary assessment as to whether a natural feature that might be a QVP is present on their land; the inspection mechanism is then available to provide a final determination. We find these provisions sufficient to provide the requisite reasonable notice.

Petitioners further challenge the constitutionality of a "catchall" provision in the 2011 law permitting the regulation of any activity that the Wetlands Inspector, with the concurrence of the Planning Board, determines "to have the potential for substantial adverse [e]ffect to the regulated areas" (Code of Town of New Paltz § 139-8 [L]). The 2011 law clarifies the meaning of the provision by defining "substantial adverse effect" as "activity that will substantially alter or impair the natural function(s) or benefit(s) of a regulated area" (Code of Town of New Paltz § 139-4). These provisions are not so vague as to force a person of ordinary intelligence to guess at their meaning, or to be susceptible to arbitrary or discriminatory enforcement (*see Matter of Oakwood Prop. Mgt., LLC v Town of Brunswick*, 103 AD3d at 1070; *Matter of Morrissey v Apostol*, 75 AD3d 993, 996 [2010]; *Clements v Village of Morristown*, 298 AD2d 777, 778 [2002]). Accordingly, petitioners failed to rebut the presumption that the 2011 law is constitutional, and it should not have been annulled on this ground.

Having thus determined that Supreme Court erred in annulling the 2011 law, we will further address the remaining causes of action, in the interest of judicial economy and as requested

by the parties. We find no merit in any of petitioners' remaining claims. Two of the petition's causes of action pertain to SEQRA; as to the first, the record does not reveal that the claimed procedural violations occurred. The second alleges that the Board improperly segmented its environmental review by including the previously-discussed "catch-all" provision in the 2011 law. The record does not support this assertion; inclusion of this provision did not result in segmentation—that is, the division of the environmental review of an action into separate stages (*see* 6 NYCRR 617.2 [ag]; *Matter of Saratoga Springs Preserv. Found. v Boff*, 110 AD3d 1326, 1328 [2013]).

The petition further claims that the 2011 law violates ECL 24-0501 (2) by regulating activities that are exempt from Department of Environmental Conservation (hereinafter DEC) permit requirements pursuant to ECL 24-0701, and that it was not enacted in compliance with enabling regulations pertaining to local government implementation of ECL article 24 (*see* 6 NYCRR part 665). However, the 2011 law expressly provides that the Town intends to exercise its regulatory authority concurrently with that of the DEC, and that the 2011 law does not supersede or assume DEC's authority (*see* Code of Town of New Paltz § 139-3 [D]). The statutory provisions and enabling regulations upon which petitioners' claims rely control circumstances in which municipalities elect to assume and replace DEC's regulatory authority; they do not apply here, as no such assumption is intended (*see* ECL 24-0501, 24-0509; 6 NYCRR 665.4; Philip Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 24-0501 at 424-425). Petitioners concede that the 2011 law is "at least as protective" as the DEC's wetlands protection regulations issued pursuant to ECL article 24 (ECL 24-0509). Accordingly, the Town's exercise of concurrent jurisdiction is permissible, and the 2011 law is not invalid on the ground that it requires permits for some activities that are statutorily exempt from DEC regulation (*see* Philip Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 24-0509 at 430-431).

The cause of action asserting a failure to comply with the referral requirements of General Municipal Law § 239-m in enacting the 2011 law is unsupported in the record, and thus lacks merit. The cause of action alleging a violation of Town Law § 264 is likewise without merit; that provision does not apply, as the 2011 law was enacted in accord with the Municipal Home Rule Law (*see* Code of Town of New Paltz § 139-2 [A]; *Matter of Pete Drown, Inc. v Town Bd. of Town of Ellenburg*, 229 AD2d 877, 878 [1996], *lv denied* 89 NY2d 802 [1996]).

The petition includes several challenges to provisions in the 2011 law by which, in certain circumstances, applicants can submit conservation plans and/or pay conservation fees to obtain approval of permit applications that would otherwise be denied. First, we reject the claim that the conservation fee established by these provisions is an ultra vires tax. The fee is imposed only in certain limited circumstances, when an applicant proposes its payment as an alternative to disapproval, and then consents to pay the amount that the Planning Board determines is "necessary to mitigate the substantial adverse effects or to replace the resources lost as a result of the proposed regulated activity" (Code of Town of New Paltz § 139-16 [G]). This fee—imposed with the applicant's consent and for the applicant's benefit—is not "imposed for the purpose of defraying the costs of government services generally without relation to particular benefits derived by the taxpayer," and is therefore not a tax (*Matter of Walton v New York State Dept. of Correctional Servs.*, 57 AD3d 1180, 1183 [2008], *affd* 13 NY3d 475 [2009] [internal quotation marks and citation omitted]; *compare Matter of Phillips v Town of Clifton Park Water Auth.*, 286 AD2d 834, 836-837 [2001], *lv denied* 97 NY2d 613 [2002]; *New York Tel. Co. v City of Amsterdam*, 200 AD2d 315, 317-318 [1994]). Moreover, the Planning Board does not have "unfettered discretion" to determine the amount of the fee; instead, the 2011 law requires the fee to reflect the cost of mitigation or replacement of lost resources, and specifies certain expenses that the Planning Board must consider in determining that amount. Such a method of determining the amount is appropriate, as the conservation fee is not a flat amount charged to all applicants, but is paid in lieu of mitigation of the particular adverse environmental effects caused by a specific activity.[4]

The petition further challenges the 2011 law's conservation plan provisions on the ground that they improperly and unconstitutionally empower the Planning Board to make quasi-judicial determinations as to whether enforcement of the 2011 law constitutes a taking. However, the 2011 law neither requires

4. On appeal, petitioners also challenge the conservation fee as unconstitutional in that it does not satisfy the " 'rough proportionality' " test applied to certain regulatory takings claims arising from land use restrictions (*Twin Lakes Dev. Corp. v Town of Monroe*, 1 NY3d 98, 104-105 [2003], *cert denied* 541 US 974 [2004], quoting *Dolan v City of Tigard*, 512 US 374, 391 [1994]). However, this claim was not made in the petition, nor have petitioners claimed that the conservation fee falls within the narrow category of exactions to which the rough proportionality test is applicable (*see Matter of Smith v Town of Mendon*, 4 NY3d 1, 11-12 [2004]). Therefore, the merits of this argument are not addressed.

nor permits the Planning Board to make a legal or judicial determination beyond its authority. Instead, the 2011 law provides that the Planning Board may allow an applicant to submit a conservation plan if, among other things, it determines that a court might reasonably find that a taking had occurred by denying the owner all substantial use of his or her property or causing a significant economic effect. Thus, this provision allows factual review by the Planning Board for the purpose of avoiding a potential taking, by permitting the applicant to submit a conservation plan as a means of obtaining approval for the activity in question. Further, petitioners have not shown that the provisions pertaining to conservation plans are preempted by the EDPL, as they have not met "the heavy burden of showing that the statutory provisions work a regulatory taking" such that the EDPL would apply (*Held v State of New York Workers' Compensation Bd.*, 85 AD3d 35, 43 [2011], *lv dismissed and denied* 17 NY3d 837 [2011], *cert denied* 566 US —, 132 S Ct 1906 [2012] [internal quotation marks and citation omitted]; *see* EDPL 101). Thus, the causes of action pertaining to conservation plans lack merit.

As for the other preemption claims, the 2011 law is not preempted by the Mined Land Reclamation Law (*see* ECL 23-2701 *et seq.*), as the inclusion of mining as a regulated activity does "not directly regulate the specifics of the mining activities or reclamation process" and "is merely incidental to [the Town's] right to regulate land use within its boundaries" (*Preble Aggregate v Town of Preble*, 263 AD2d 849, 850 [1999], *lv denied* 94 NY2d 760 [2000]; *see Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 680-683 [1996], *supra*; *Troy Sand & Gravel Co., Inc. v Town of Nassau*, 101 AD3d 1505, 1509 [2012]). Likewise, the provisions pertaining to the displacement or destruction of beaver dams are not preempted by state law, as nothing in the permit requirements for such activity in ECL article 24 and its enabling regulations reflects the state's intent to enact a comprehensive regulatory scheme that explicitly or implicitly occupies the field of beaver control (*see* ECL 24-0701; 6 NYCRR 663.1, 663.4; *Vatore v Commissioner of Consumer Affairs of City of N.Y.*, 83 NY2d 645, 649-651 [1994]; *Matter of Pete Drown, Inc. v Town Bd. of Town of Ellenburg*, 188 AD2d 850, 851 [1992]).

The record provides no support for the cause of action contending that the 2011 law—which provides that its purpose is to protect the health, safety and well-being of Town citizens and property "by preventing despoliation and destruction of wetlands, waterbodies and watercourses, and associated buffer

areas" (Code of Town of New Paltz § 139-1)—is not reasonably related to a legitimate governmental purpose (*see Spilka v Town of Inlet*, 8 AD3d 812, 815 [2004]). Finally, petitioners contend that the 2011 law must be annulled because the Town did not strictly comply with a provision therein requiring property owners to be notified of the law within 45 days of its enactment. It appears from the record that the required notice was indeed provided, but that the mailing did not occur until a few days after the 45-day period elapsed. Petitioners do not claim and have not shown any harm or prejudice resulting from the brief delay, which did not violate the Town Law or any other enactment (*compare Matter of Kuhn v Town of Johnstown*, 248 AD2d 828, 829-830 [1998]; *Matter of Cipperley v Town of E. Greenbush*, 213 AD2d 933, 934 [1995]). Accordingly, this minor procedural irregularity does not require annulment.

Petitioners' remaining contentions, to the extent not specifically addressed herein, have been considered and found to be without merit.

Lahtinen, J.P., Stein and Rose, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, petition dismissed, and it is declared that Local Law No. 5 (2011) of the Town of New Paltz has not been shown to be unconstitutional.