*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 10, 2015          520758
_____

SULLIVAN FARMS IV, LLC, et al.,
                    Appellants,
          v                              MEMORANDUM AND ORDER

VILLAGE OF WURTSBORO et al.,
                    Respondents.
_____


Calendar Date:  October 19, 2015

Before:  McCarthy, J.P., Rose, Devine and Clark, JJ.

_____

        Whiteman Osterman & Hanna, LLP, Albany (John J. Henry of counsel), for appellants.

        Lewis & McKenna, Saddle River, New Jersey (Alyse D. Terhune of counsel), for respondents.

_____


Devine, J.

        Appeal from an order and judgment of the Supreme Court (McGuire, J.), entered October 22, 2014 in Sullivan County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondents' motion to dismiss the amended petition/complaint.

        Petitioner Sullivan Farms II, Inc. owned approximately 54 acres of real property in the Village of Wurtsboro, Sullivan County and 31 acres of adjoining property in the Town of Mamakating, Sullivan County.  In 2009, Sullivan Farms II obtained conditional final site plan and subdivision approval from respondent Village of Wurtsboro Planning Board for the development and construction of a 72-unit townhouse residential cluster development known as "Kaufman Farms West" (see Village

Law § 7-738 [1] [a]; Village of Wurtsboro Zoning Law § 5.19). The approval lapsed due to inactivity, prompting petitioner Sullivan Farms IV, LLC, the successor-in-interest to Sullivan Farms II, to seek approval in 2011. The Planning Board again gave its imprimatur for the project and, in 2012, the subdivision plat for the project was signed by the Planning Board chairperson and filed with the Sullivan County Clerk. Meanwhile, in June 2012, petitioner Kaufman Farms, LLC submitted a site plan/special use application with the Planning Board for a separate residential cluster development, known as "Kaufman Farms East," on nearby property that it owned.[1]

The Planning Board revisited its approval of the Kaufman Farms West project in 2013. During the pendency of that review, respondent Village of Wurtsboro Board of Trustees adopted Local Law No. 1 of the Village of Wurtsboro (2014) and Local Law No. 2 of the Village of Wurtsboro (2014). The two local laws amended the Village's subdivision regulations and zoning laws to, among other things, alter the methodology for calculating the number of allowable building lots or dwelling units for a residential cluster subdivision within the Village. The Planning Board thereafter rescinded its prior approval for Kaufman Farms West in May 2014, finding that the approval conflicted with applicable state and local laws and was void ab initio.

Petitioners thereafter commenced this hybrid CPLR article 78 proceeding and declaratory judgment action interposing 12 causes of action challenging the adoption of the subject local laws and the determination by the Planning Board to rescind the subdivision and site plan approvals for Kaufman Farms West. Petitioners subsequently filed an amended petition/complaint adding two additional causes of action. Respondents filed a pre-answer motion to dismiss, arguing that the amended petition/complaint was deficient in various respects. Supreme Court agreed and determined that, as is relevant here, the amended petition/complaint failed to state a cause of action. Petitioners now appeal.

---

[1] The record indicates that no further action has occurred with regard to the application for Kaufman Farms East.

"In assessing the adequacy of a complaint under CPLR 3211 (a) (7), the court must give the pleading a liberal construction, accept the facts alleged in the complaint to be true and afford the plaintiff 'the benefit of every possible favorable inference'" (J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324, 334 [2013], quoting AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 5 NY3d 582, 591 [2005]). Nevertheless, "allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration" (Maas v Cornell Univ., 94 NY2d 87, 91 [1999] [internal quotation marks and citation omitted]; accord Simkin v Blank, 19 NY3d 46, 52 [2012]; see Matter of Conners v Town of Colonie, 108 AD3d 837, 839 [2013]). Supreme Court correctly determined that such was the case presented here and, as such, we affirm.

Turning first to the rescission of the subdivision and site plan approval, the Planning Board was empowered to rescind an approval that was issued in excess of legal authority and void ab initio (see Matter of Reiss v Keator, 150 AD2d 939, 941 [1989]; see also Town of Amherst v Rockingham Estates, LLC, 98 AD3d 1241, 1242 [2012]). Moreover, "[d]espite the lack of statutory authority, a planning board may reconsider a determination if there has been a material change of circumstances since its initial approval of the plat or new evidence is presented" (Matter of 1066 Land Corp. v Planning Bd. of Town of Austerlitz, 218 AD2d 887, 887 [1995]; see Matter of Lynn v Planning Bd. of the Town of E. Hampton, 89 AD3d 1028, 1028 [2011], lv denied 18 NY3d 807 [2012]). The question is accordingly not whether the Planning Board had the power to act in the way it did, but whether it abused its discretion in doing so (see Matter of Center of Deposit, Inc. v Village of Deposit, 108 AD3d 851, 853 [2013]; Matter of Lynn v Planning Bd. of the Town of E. Hampton, 89 AD3d at 1028).

The number of building lots or dwelling units in a cluster development "shall in no case exceed the number which could be permitted, in the planning board's judgment, if the land were subdivided into lots conforming to the minimum lot size and density requirements of the zoning local law applicable to the district or districts in which such land is situated" (Village

Law § 7-738 [3] [b]).  Kaufman Farms West was located in a
district zoned for cluster developments and, using a formula
provided by the Village of Wurtsboro Zoning Law, the 85 acres
encompassing the development was more than sufficient to permit
the proposed 72 dwelling units.

That being said, the documents submitted in support of the
applications for approval demonstrate that 31 acres of the
subdivision were located outside the Village limits in the Town
of Mamakating, Sullivan County.[2]  This was no revelation to the
Planning Board, as the acreage was included in the subdivision
plan upon the expectation that the land would be annexed from the
Town of Mamakating.  Annexation never occurred, however, and the
54 acres actually located within the Village were inadequate to
support the scope of the proposed subdivision.  Inasmuch as the
Planning Board had no jurisdiction over property outside the
Village limits (see e.g. Village Law § 7-700; Matter of Golden v
Planning Bd. of Town of Ramapo, 30 NY2d 359, 369-370 [1972];
Matter of Village of Chestnut Ridge v Town of Ramapo, 45 AD3d 74,
88 [2007], lvs dismissed 12 NY3d 793 [2009], 15 NY3d 817 [2010]),
and the land within the Village did not permit a project of the
scope proposed under the terms of the local zoning regulations,
the Planning Board rationally determined that its final approval
of the Kaufman Farms West project violated state and local law

_____

[2]  These documents conclusively contradict the assertion of
petitioners that an "alternative" density calculation was used
that relied in whole upon property within the Village that later
became the subject of the proposed Kaufman Farms East
subdivision.  Indeed, an engineering review that cited this
alternative acknowledged that the proposal before the Planning
Board involved land within the Town of Mamakating, and that
preliminary plans for Kaufman Farms East must be developed
"before considering [the alternative] as a solution . . . with
regard to density calculations."  No effort was made to obtain
subdivision approval for Kaufman Farms East until after approvals
had been granted for Kaufman Farms West, and the record leaves no
doubt that the Planning Board did not rely upon the alternative
calculation.

and must be rescinded.[3]

Petitioners further asserted a claim alleging that they had obtained vested rights in the Kaufman Farms West development based upon the Planning Board's approval of the subdivision. It is true that "a vested right can be acquired when, pursuant to a legally issued [subdivision approval], the landowner demonstrates a commitment to the purpose for which the [approval] was granted by effecting substantial changes and incurring substantial expenses to further the development" (Town of Orangetown v Magee, 88 NY2d 41, 47 [1996]; see Matter of Waterways Dev. Corp. v Town of Brookhaven Zoning Bd. of Appeals, 126 AD3d 708, 711 [2015], lv denied 25 NY3d 909 [2015]; Matter of Pete Drown, Inc. v Town Bd. of Town of Ellenburg, 229 AD2d 877, 878 [1996], lv denied 89 NY2d 802 [1996]). The critical point was that subdivision approval here was not legally granted in the first instance and, thus, Sullivan Farms never had a valid approval from which vested rights could flow (see Matter of Lamar Adv. of Penn, LLC v Pitman, 9 AD3d 734, 736 [2004]; Incorporated Vil. of Asharoken v Pitassy, 119 AD2d 404, 416 [1986], lv denied 69 NY2d 606 [1987]).

Petitioners next contend that Supreme Court erred in dismissing its State Environmental Quality Review Act (hereinafter SEQRA) challenges to the Planning Board's rescission of subdivision approval. Petitioners alleged that the Planning Board failed to make any findings pursuant to SEQRA when it

---

[3] Estoppel may not generally be invoked against the Planning Board to prevent it from rescinding an erroneously issued permit, and petitioners have alleged no facts that could potentially allow an estoppel argument to be made (see Matter of Parkview Assoc. v City of New York, 71 NY2d 274, 282 [1988], appeal dismissed and cert denied 488 US 801 [1988]; Matter of Oakwood Prop. Mgt., LLC v Town of Brunswick, 103 AD3d 1067, 1069 [2013], lv denied 21 NY3d 853 [2013]). Nor is there any basis for the application of Village Law § 7-740, which establishes a statute of limitations for those who wish to challenge a determination of the Planning Board in a CPLR article 78 proceeding and has no applicability to the inherent authority of the Planning Board to revisit its prior determinations.

rescinded the subdivision approval, but that claim was rendered academic by the Planning Board's adoption of a revised determination that made the requisite findings (see Matter of City of Gloversville v Town of Johnstown, 210 AD2d 760, 761-762 [1994]; Matter of Weinstein Enters. v Town of Kent, 171 AD2d 874, 875 [1991]; compare Matter of City of Glens Falls v Town of Queensbury, 90 AD3d 1119, 1120-1121 [2011]).  The Planning Board correctly noted in its revised determination that it "was merely performing the ministerial function of rescinding an approval that was void ab initio" and, as a result, was not performing an "action" so as to trigger the requirements of SEQRA (Matter of Reiss v Keator, 150 AD2d at 942; see ECL 8-0105 [4], [5] [ii]).

With regard to the adoption of the local laws, the Board of Trustees correctly designated them as "unlisted" actions because, instead of changing the allowable uses within a zoning district, they only amended the procedures to be employed in assessing proposed subdivisions and cluster developments (see 6 NYCRR 617.2 [ak]; compare 6 NYCRR 617.4 [b] [2]; Centerville's Concerned Citizens v Town Bd. of Town of Centerville, 56 AD3d 1129, 1130 [2008]).  Respondents submitted documentary proof demonstrating that, as is appropriate for unlisted actions, a short environmental assessment form for each local law was submitted "to assist [the Board of Trustees] in determining the environmental significance or non-significance of actions" (6 NYCRR 617.2 [m]; see 6 NYCRR 617.6 [a] [3]; Matter of Ellsworth v Town of Malta, 16 AD3d 948, 949 [2005]).  The Board of Trustees then made "negative declaration[s] as to whether the proposed action[s] will have a significant effect on the environment" (Matter of Cathedral Church of St. John the Divine v Dormitory Auth. of State of N.Y., 224 AD2d 95, 99 [1996], lv denied 89 NY2d 802 [1996]; see Matter of Ellsworth v Town of Malta, 16 AD3d at 949).

The record demonstrates that, in so doing, the Board of Trustees "identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination[s]" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986], quoting Aldrich v Pattison, 107 AD2d 258, 265 [1985]; accord Matter of Friends of the Shawangunks, Inc. v Zoning Bd. of Appeals of Town of

Gardiner, 56 AD3d 883, 884-885 [2008]). The short form environmental assessment forms made clear that the local laws would have no environmental impacts and, indeed, were intended to recognize that cluster developments were more environmentally beneficial than subdivisions in that they utilized a smaller portion of a proposed site. In furtherance of that recognition, the local laws authorized "the Planning Board to modify the minimum lot area, lot width, setback and frontage requirements as applied to cluster developments," and harmonized the Village's subdivision regulations and zoning law with regard to calculating the maximum number of dwelling units permitted in a cluster development. Moreover, the public was given notice of the proposed amendments to the local laws, and petitioners were given an opportunity to offer comments and address the potential adverse environmental impacts at a public hearing. Given the content of the local laws and the documented efforts of the Board of Trustees to discern their environmental impact, we agree with Supreme Court that the Board of Trustees took the requisite hard look at the environmental impacts and made a sufficient elaboration of the basis of its negative declarations (see Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 689-690 [1996]; Matter of Gabrielli v Town of New Paltz, 116 AD3d 1315, 1318 [2014]).

Petitioners lastly contend that Supreme Court erred in dismissing their claims that the subject local laws were unconstitutionally vague insofar as they provided the Planning Board with unfettered discretion to determine the number of dwelling units permitted on a given property. "[I]t is incumbent on the challenging parties to demonstrate that the statutory language is so indefinite that they could not have reasonably understood it" (Clements v Village of Morristown, 298 AD2d 777, 778 [2002] [internal quotation marks and citations omitted]; see Matter of Gabrielli v Town of New Paltz, 116 AD3d at 1319). A specific methodology is set forth in the local laws for determining the maximum number of dwelling units in a proposed cluster subdivision and, suffice it to say, this patently clear language invites neither misunderstanding by a person of ordinary intelligence nor arbitrary enforcement by the Planning Board (compare Matter of Turner v Municipal Code Violations Bur. of City of Rochester, 122 AD3d 1376, 1377-1378 [2014]).

Petitioners' constitutional claims are therefore belied by the plain language of the local laws, and Supreme Court properly dismissed them (see Matter of Burke v Denison, 218 AD2d 894, 896 [1995]).

Petitioners' remaining contentions, to the extent that they are not rendered academic in light of the foregoing, have been examined and found to be lacking in merit.

McCarthy, J.P., Rose and Clark, JJ., concur.

ORDERED that the order and judgment is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court