Matter of Village of Ballston Spa v City of Saratoga Springs (2018 NY Slip Op 05248)





Matter of Village of Ballston Spa v City of Saratoga Springs


2018 NY Slip Op 05248


Decided on July 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 12, 2018

525639

[*1]In the Matter of VILLAGE OF BALLSTON SPA et al., Petitioners,
v
CITY OF SARATOGA SPRINGS et al., Respondents.

Calendar Date: June 8, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Clark and Pritzker, JJ.


Harris Beach PLLC, Albany (John A. Mancuso of counsel), for petitioners.
Miller, Mannix, Schachner & Hafner, LLC, Glens Falls (Mark Schachner of counsel), for respondents.



MEMORANDUM AND JUDGMENT
McCarthy, J.P.
Proceeding initiated in this Court pursuant to EDPL 207 to review a determination of respondent City of Saratoga Springs, among other things, condemning portions of petitioners' property.
For several years, respondents City of Saratoga Springs and City Council of the City of Saratoga Springs (hereinafter collectively referred to as the City) have been contemplating installing a continuous nonmotorized trail to improve pedestrian and bicycle travel along Geyser Road. The City developed designs for three projects, collectively known as the Geyser Road Trail Project (hereinafter the project), to meet its goal. The project would require the City to acquire a strip of land along Geyser Road for the paved trail, buffer areas, grading and drainage. Initially, the City incorrectly classified the project as an unlisted action, prepared a short environmental assessment form (hereinafter EAF) and adopted a negative declaration indicating that the project would not have a significant adverse impact. After properly classifying the project as a type I action, the City undertook a more comprehensive review under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), completing parts 1 and 2 of a full EAF. During the process, petitioners, who own or live on property along Geyser Road that is within the area of the project, advised the City of their concerns regarding the project's [*2]potential environmental impacts and their objections to the condemnation of portions of their property pursuant to eminent domain. Specifically, petitioner Village of Ballston Spa complained that its water supply would be affected or at risk if the City condemned portions of two parcels owned by the Village that are located in the city.
Notwithstanding petitioners' objections and concerns, in July 2017, the City adopted a resolution that the project will not have any significant adverse environmental impact and issued a negative declaration for the project. After one of the petitioners raised alleged deficiencies in the City's SEQRA review, in September 2017, the City adopted a supplemental resolution ratifying its SEQRA negative declaration, as well as a determination and findings under the Eminent Domain Procedure Law (see EDPL 204). Petitioners commenced this proceeding in this Court challenging the City's SEQRA determinations and proposed condemnation of portions of petitioners' property for the project (see EDPL 207). We confirm.
The prior public use doctrine does not bar the City from condemning a portion of real property owned by the Village. That doctrine provides that, "'where lands have once been taken or acquired for public use, they cannot be taken for another public use, at least if such other public use would interfere with or destroy the public use first acquired, unless the intention of the Legislature that such lands should be so taken is shown by express terms or necessary implication'" (Matter of Board of Coop. Educ. Servs. of Albany-Schoharie-Schenectady-Saratoga Counties v Town of Colonie, 268 AD2d 838, 841-842 [2000], quoting New York Cent. & Hudson Riv. R.R. Co. v City of Buffalo, 200 NY 113, 117-118 [1910]; see Westchester Cr. Corp. v New York City School Constr. Auth., 286 AD2d 154, 158 [2001] [public land should not be taken for a different public use absent a special and unusual reason], affd 98 NY2d 298 [2002]). Petitioners allege that the Village's property at issue is devoted to another public use because: it "contains an aquifer that acts as a water source to Village residents"; two of the Village's water production wells "are located on land adjacent to the proposed trail"; "the Village's back up water source, an open and above ground reservoir, is located [approximately] 1,500 feet from the proposed trail"; and trunk lines connected to the Village's reservoir are located underneath the proposed trail and flow from the reservoir to the Village. Petitioners further allege that they raised concerns with the City about trail users accessing the reservoir and contaminating the Village's water supply.
Providing water to residents is undoubtedly a public use. However, petitioners have not established that the Village's property is devoted to that use. Nothing in the record proves petitioners' bare allegation that trunk lines connected to the Village's reservoir are located underneath the proposed trail. It appears that the Village's water production wells and reservoir are located adjacent to, not on, the property at issue, and petitioners have failed to demonstrate how the City's condemnation of the Village's property would "interfere with or destroy the public use" (Matter of Board of Coop. Educ. Servs. of Albany-Schoharie-Schenectady-Saratoga Counties v Town of Colonie, 268 AD2d at 841-842 [internal quotation marks and citation omitted]). Accordingly, the prior public use doctrine will not prevent the City from condemning the Village's property.
Furthermore, the City complied with SEQRA's procedural requirements. A lead agency must strictly comply with SEQRA's mandates (see Matter of New York City Coalition to End Lead Poisoning v Vallone, 100 NY2d 337, 348 [2003]). "SEQRA requires an [environmental impact statement (hereinafter EIS)] when an agency action 'may have a significant effect on the environment,' and such an impact is presumed to be likely where, as here, a type I action is [*3]involved; however, a type I action does not, per se, necessitate the filing of an EIS" (Matter of Gabrielli v Town of New Paltz, 116 AD3d 1315, 1316 [2014] [internal quotation marks, brackets and citations omitted], quoting ECL 8-0109 [2]; see 6 NYCRR 617.4 [a] [1]; Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 82 AD3d 1377, 1378 [2011]). "A negative declaration may be issued, obviating the need for an EIS, if the lead agency . . . determines that 'no adverse environmental impacts [will result] or that the identified adverse environmental impacts will not be significant'" (Matter of Gabrielli v Town of New Paltz, 116 AD3d at 1316, quoting 6 NYCRR 617.7 [a] [2]; see Matter of New York City Coalition to End Lead Poisoning v Vallone, 100 NY2d at 347). The lead agency's determination of significance must be in writing, contain "a reasoned elaboration" and provide "reference to any supporting documentation" (6 NYCRR 617.7 [b] [4]; see generally Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]).
"Upon judicial review, [a court] may not substitute [its] judgment for that of the [lead agency], and may annul its decision 'only if it is arbitrary, capricious or unsupported by the evidence'" (Matter of Gabrielli v Town of New Paltz, 116 AD3d at 1316, quoting Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 232 [2007]). "The court's function is to assure that the agency has satisfied SEQRA, procedurally and substantively, not to evaluate data de novo, weigh the desirability of any particular action, choose among alternatives or otherwise substitute its judgment for that of the agency" (Matter of Town of Amsterdam v Amsterdam Indus. Dev. Agency, 95 AD3d 1539, 1543 [2012] [citation omitted]; see Akpan v Koch, 75 NY2d 561, 570 [1990]). Moreover, "an agency's obligation under SEQRA must be viewed in light of a rule of reason, realizing that not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before the substantive dictates of SEQRA are satisfied" (Matter of Gabrielli v Town of New Paltz, 116 AD3d at 1318 [internal quotation marks and citation omitted]). The relevant inquiry is "whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 417 [internal quotation marks and citation omitted]).
The City completed parts 1 and 2 of the EAF and was not required to complete part 3. The EAF form directs that part 3 must be completed "for every question in [p]art 2 where the impact has been identified as potentially moderate to large or where there is a need to explain why a particular element of the proposed action will not, or may, result in a significant adverse environmental impact" (6 NYCRR 617.20, appendix A, part 3). None of the impacts were identified as potentially moderate or large, and the City had discretion to determine whether there was a need to explain why any particular aspect of the project will not have a significant adverse impact on the environment. Thus, although the City could have completed part 3 of the EAF, it was not required to do so (see Matter of Gabrielli v Town of New Paltz, 116 AD3d at 1317).
Nevertheless, the City was required to provide a written "reasoned elaboration" for its negative declaration (6 NYCRR 617.7 [b] [4]). The July 2017 resolution containing the negative declaration did not contain sufficient information to explain the basis for the City's determination. The September 2017 supplemental resolution — which reaffirmed the negative declaration and provided more information regarding the basis for that determination — specifically addressed each question in part 2 of the EAF in which the potential for a small impact was identified and explained the City's reasoning in determining that the project would not result in any significant adverse environmental impacts. Although the supplemental resolution contains a reasoned elaboration, the parties dispute whether the supplemental [*4]resolution was permitted under SEQRA.
The purpose of 6 NYCRR 617.7 (b) (4), the regulation that requires a reasoned elaboration of a determination of significance, "is to focus and facilitate judicial review and . . . to provide affected landowners and residents with a clear, written explanation of the lead agency's reasoning at the time the negative declaration is made" (Matter of Dawley v Whitetail 414, LLC, 130 AD3d 1570, 1571 [2015]; accord Matter of Rochester Eastside Residents for Appropriate Dev., Inc. v City of Rochester, 150 AD3d 1678, 1680 [2017]; see Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay, 88 AD2d 484, 492 [1982]). Courts have held that documents containing the lead agency's reasoning and rationale, but prepared subsequent to the issuance of a negative declaration, cannot fulfill the mandate for a reasoned elaboration (see e.g. Matter of Rochester Eastside Residents for Appropriate Dev., Inc. v City of Rochester, 150 AD3d at 1680; Matter of Dawley v Whitetail 414, LLC, 130 AD3d at 1570-1571). However, one of those courts found it notable that, in the particular case under review, the document that was subsequently attached to the negative declaration had not been provided to the lead agency until after its members had voted to approve the negative declaration, and the record there established that the lead agency had never officially adopted the attachment as part of its negative declaration (see Matter of Dawley v Whitetail 414, LLC, 130 AD3d at 1571).
In contrast, here the City did consider and adopt the supplemental resolution, in which the City also reaffirmed its determination that the project would have no significant environmental impact (compare id.). Notably, this is not a situation where the lead agency originally declined to consider certain areas of potential environmental concern and later issued a revised negative declaration to cure the omission without conducting a new review (compare Matter of Golten Mar. Co. v New York State Dept. of Envtl. Conservation, 193 AD2d 742, 743 [1993]). Rather, the City actually performed the steps required in the SEQRA review process and considered areas of potential environmental concern, but failed to provide an adequate written explanation for its negative declaration. Upon realizing its mistake (albeit after receiving communications from petitioners complaining about the negative declaration), and before approving the condemnation of property in relation to the project, the City held a public meeting and formally adopted the supplemental resolution to remedy the defects in the July 2017 negative declaration (compare Matter of Pittsford Canalside Props., LLC v Village of Pittsford, 137 AD3d 1566, 1568 [2016] [municipality had no authority to rescind negative declaration after it approved the underlying project], lv dismissed 27 NY3d 1080 [2016]; Vitiello v City of Yonkers, 255 AD2d 506, 507 [1998] [resolution authorizing negative declaration was passed two months after municipality adopted rezoning ordinance]). Under the circumstances, remittal to the City for further environmental review or explanation of its determination would be redundant (see Matter of King v Saratoga County Bd. of Supervisors, 89 NY2d 341, 349-350 [1996]).
Petitioners contend that the City could not change its July 2017 negative declaration unless it complied with the regulatory provision governing amendments to a negative declaration (see 6 NYCRR 617.7 [e]). Pursuant to the relevant subdivision of the pertinent regulation, a lead agency may, in its discretion, amend a negative declaration when substantive project changes are proposed, new information is discovered or changes in circumstances related to the project arise that were not previously considered, and the lead agency has determined "that no significant adverse environmental impacts will occur" (6 NYCRR 617.7 [e] [1]; see Boyles v Town Bd. of Town of Bethlehem, 278 AD2d 688, 691 [2000]). The next subdivision states that a lead agency "must rescind a negative declaration" in any of those same situations if the agency "determines that a significant adverse environmental impact may result" (6 NYCRR 617.7 [f] [1]; see Matter [*5]of Global Cos. LLC v New York State Dept. of Envtl. Conservation, 155 AD3d 93, 98 [2017], lv denied 30 NY3d 913 [2018]).
Rather than constituting an exhaustive list of situations in which an agency may make any changes to a negative declaration, in our view 6 NYCRR 617.7 (e) and (f) were intended to prescribe how a lead agency should or must respond when confronted with those listed situations. Thus, although we agree that none of the bases for amendment listed in the regulation were raised here, that did not preclude the City from adopting the supplemental resolution. To hold otherwise would prevent a lead agency from ever correcting a mistake in a negative declaration unless one of the listed situations existed, and would require annulment of determinations and remittal for the agency to approve a "new" determination that often will be the same as the agency's revised determination; we reject an interpretation that elevates form over substance. Furthermore, considering the EAF, the supplemental resolution and the remainder of the record, we conclude that the City "identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 417 [internal quotation marks and citation omitted]).
The City did not abuse its discretion in determining the scope of the proposed taking. Although a municipality cannot use the power of eminent domain to take "'property not necessary to fulfill [a] public purpose, it is generally accepted that the condemnor has broad discretion in deciding what land is necessary to fulfill that purpose'" (Matter of Doyle v Schuylerville Cent. School Dist., 35 AD3d 1058, 1059 [2006], lv denied 9 NY3d 804 [2007], quoting Matter of Rafferty v Town of Colonie, 300 AD2d 719, 723 [2002]; accord Matter of Eisenhauer v County of Jefferson, 122 AD3d 1312, 1313 [2014]). "In this regard, a condemnor is not limited to an easement when it acquires property for a legitimate public purpose" (Matter of Doyle v Schuylerville Cent. School Dist., 35 AD3d at 1059; see Matter of City of New York [Third Water Tunnel, Shaft 30B], 18 AD3d 342, 343 [2005], affd 6 NY3d 540 [2006]). The City proposed to take fee ownership of a small strip of land along Geyser Road, including a strip on each petitioner's property, that will eventually contain up to a three-foot wide portion of the trail — with the rest of the trail constructed in the right-of-way to Geyser Road — as well as a buffer area and land for grading, drainage and the extension of an existing culvert. Because the trail will be open for continuous use for recreational purposes by all members of the public, the City did not exceed its discretion by seeking fee title rather than an easement (see Matter of Doyle v Schuylerville Cent. School Dist., 35 AD3d at 1059; compare Matter of Davis Holding Co., LLC v Village of Margaretville, 55 AD3d 1101, 1104-1105 [2008]).
Egan Jr., Lynch, Clark and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.