■ In the Matter of GRANGER GROUP et al., Respondents, v TOWN OF TAGHKANIC et al., Respondents, and ALAN WILZIG et al., Appellants. [909 NYS2d 556]—

Kavanagh, J. Appeals (1) from an order of the Supreme Court (McGrath, J.), entered June 5, 2009 in Columbia County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, among other things, granted petitioners' motion for a preliminary injunction, and (2) from a judgment of said court, entered January 8, 2010 in Columbia

County, which, among other things, granted petitioners' application to, among other things, permanently enjoin respondents Town of Taghkanic Planning Board and Dennis Callahan from issuing a building permit, certificate of compliance, certificate of occupancy or site plan approval to respondents Alan Wilzig and Karin Wilzig.

After they purchased a 250-acre farm in the Town of Taghkanic, Columbia County, respondents Alan Wilzig and Karin Wilzig began to construct a motorcycle track on the property. In July 2006, when the racetrack was substantially completed, respondent Dennis Callahan, the Town's Code Enforcement Officer and Building Inspector, issued an "Order to Remedy Violation," which alleged that construction of the racetrack was a "violation of the Town['s] Use Regulations." The Wilzigs appealed this determination to respondent Town of Taghkanic Zoning Board of Appeals (hereinafter ZBA), claiming that the track was an accessory use of their property and a permit was not required for its construction.[1] The ZBA disagreed,[2] prompting the Wilzigs to commence a combined declaratory judgment action and CPLR article 78 proceeding that, in effect, sought to annul the ZBA's finding that the racetrack was not an accessory use of their property. Supreme Court (Hummel, J.) found that the ZBA's determination was not arbitrary and capricious and dismissed the Wilzigs' petition/complaint.[3]

Subsequently, the Wilzigs sought a determination from Callahan as to whether the racetrack could qualify as a recreational use of their property under the Town's zoning ordinance. Callahan determined that it could be a recreational use, but that site plan approval had to be first obtained from respondent Town of Taghkanic Planning Board. Petitioners, nearby landowners and the Granger Group, an "association formed for the purpose of insuring fair and reasonable enforcement of land use regulations in the Town of Taghkanic," appealed this decision by Callahan to the ZBA, which denied the appeal. While that appeal was pending, the Wilzigs submitted their site plan to the Planning Board, which conducted a review pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), and subsequently granted site plan approval.

---

1. During that same time period, the Wilzigs obtained permits to renovate certain buildings on the property and expand an existing pond.

2. When it denied the Wilzigs' appeal that the racetrack was an accessory use, the ZBA specifically "advised the Wilzigs that their proposed sporting course . . . could be considered a recreational use under the Town's zoning ordinance subject to site plan approval."

3. The Wilzigs never perfected an appeal from Supreme Court's judgment dismissing this CPLR article 78 proceeding.

In response to this finding, petitioners commenced the following proceedings/actions: (1) a declaratory judgment action seeking, among other things, an order that the racetrack was not an authorized use of the Wilzigs' property under the Town's zoning ordinance and a preliminary and permanent injunction prohibiting the Wilzigs from using it; (2) a CPLR article 78 proceeding to, among other things, annul the Planning Board's approval of the site plan; and (3) a combined CPLR article 78 proceeding and action for declaratory judgment challenging the ZBA's finding that the racetrack could constitute a recreational use of the Wilzigs' property under the Town's zoning ordinance.[4] While these proceedings were pending, Supreme Court (McGrath, J.) issued a preliminary injunction enjoining the Wilzigs from using the racetrack and completing its construction. After the parties stipulated to consolidating all three proceedings, Supreme Court found that the Wilzigs were barred by res judicata from submitting an application to Callahan for a permit to construct a racetrack as a recreational use of their property and issued a permanent injunction banning the Wilzigs from ever using the racetrack or completing its construction. The Wilzigs now appeal from Supreme Court's order and judgment.[5]

In finding that res judicata applied to this proceeding, Supreme Court concluded that when the Wilzigs appealed Callahan's initial notice to the ZBA claiming that construction of the racetrack was a "violation of the Town['s] Use Regulations" and instituted their CPLR article 78 proceeding, they should have claimed that the racetrack was not only an accessory use of their property under the Town's zoning ordinance, but a recreational use as well. In that regard, it must be noted that the Wilzigs could not have made such a claim in the CPLR article 78 proceeding because that proceeding was strictly limited by what transpired before the ZBA when it affirmed Callahan's initial determination that the racetrack was not an accessory use of the Wilzigs' property and could not be constructed without a permit (*see Matter of Kaufman v*

---

4. In a separate proceeding, this Court affirmed Supreme Court's (Hummel, J.) dismissal of petitioners' challenge to a decision by Callahan to issue a building permit to allow the Wilzigs to construct a storage facility on the property (*Matter of Granger Group v Zoning Bd. of Appeals of Town of Taghkanic*, 62 AD3d 1102 [2009]).

5. The Wilzigs' appeal from the nonfinal order must be dismissed because "the right to appeal from [such] order terminates upon the entry of a final judgment" (*Neissel v Rensselaer Polytechnic Inst.*, 54 AD3d 446, 449 n 3 [2008] [internal quotation marks and citations omitted], *lv denied* 11 NY3d 716 [2009]). Their appeal from the final judgment, however, brings this order up for review (*see id.*).

*Incorporated Vil. of Kings Point,* 52 AD3d 604, 607 [2008]; *Matter of Klingaman v Miller,* 168 AD2d 856, 857 [1990]). Moreover, before res judicata can be applied to an administrative determination (*see Ryan v New York Tel. Co.,* 62 NY2d 494, 499 [1984]; *Matter of Siegel v Zoning Bd. of Appeals of Vil. of Irvington,* 73 AD3d 936, 937 [2010]), " 'it is necessary to determine whether to do so would be consistent with the function of the administrative agency involved, the peculiar necessities of the particular case, and the nature of the precise power being exercised' " (*Matter of Josey v Goord,* 9 NY3d 386, 390 [2007], quoting *Matter of Venes v Community School Bd. of Dist. 26,* 43 NY2d 520, 524 [1978]; *see* Borchers and Markell, New York State Administrative Procedure and Practice § 3.23, at 76 [2d ed] ["preclusion must make sense within the overall context of the agency's procedures" (internal quotation marks and citation omitted)]).

Here, Supreme Court found that the Wilzigs were required to raise all possible permissible uses of their property under the zoning ordinance—including whether it qualified as a recreational use—when they first challenged Callahan's determination that construction of the racetrack required a permit. However, to qualify as a recreational use of their property, the Town's zoning ordinance requires that site plan approval be first obtained from the Planning Board after it conducts a SEQRA review to determine the proposal's environmental impact. Even had the Wilzigs argued—when they first appeared before the ZBA to challenge Callahan's "order to remedy"— that the racetrack was a recreational use of their property, such a claim would have been rejected because a site plan had not been approved and the requisite SEQRA review had not been conducted.[6] To require a property owner in such a circumstance to raise all possible claims that they might have under the zoning ordinance would be undoubtedly onerous[7] and, in our view, establishes a process that fails to account for the "peculiar necessities" that are inherent in these administrative proceedings (*compare Bonded Concrete, Inc. v Town of Saugerties,* 24 AD3d 943, 944-945 [2005]).

---

**6.** We also note that when it rejected petitioners' res judicata argument, the ZBA, in an attempt to clarify its prior ruling, found that it was unable at that time to determine that the track was a recreational use of the Wilzigs' property because Callahan had not made any such determination nor had site plan approval been obtained from the Planning Board.

**7.** For example, a site plan per Town Law § 274-a (1) must be "prepared to specifications and contain[ ] necessary elements, as set forth in the applicable zoning ordinance or local law, which shows the arrangement, layout and design of the proposed use of the single parcel of land as shown on said plan."

Petitioners also argue that the ZBA's decision to permit a racetrack as a recreational use on the Wilzigs' property represented an irrational interpretation of the Town's zoning ordinance (*see Matter of Rivendell Winery, LLC v Donovan*, 74 AD3d 1594, 1594-1595 [2010]; *Matter of Ohrenstein v Zoning Bd. of Appeals of Town of Canaan*, 39 AD3d 1041, 1041-1042 [2007]). However, the Town's ordinance does provide that "club or recreation" uses of property are permitted in the district (*see* Zoning Ordinance of the Town of Taghkanic, § III [A]) and, while it does not define what would constitute a recreational use, it does require that any words not so defined "shall carry their customary meanings" (Zoning Ordinance of the Town of Taghkanic, § XI). The ZBA concluded—quite reasonably in our view—that the racetrack constituted a recreational use of the Wilzigs' property because it would be used for "private, non-commercial recreational purposes including, but not limited to, jogging, bicycle riding, skateboarding, rollerblading and riding vintage motorcycles" and, as such, fell within the customary meaning of recreation as that term is used in the zoning ordinance (*see Matter of West Beekmantown Neighborhood Assn., Inc. v Zoning Bd. of Appeals of Town of Beekmantown*, 53 AD3d 954, 956 [2008]; *Matter of Committee to Protect Overlook, Inc. v Town of Woodstock Zoning Bd. of Appeals*, 24 AD3d 1103, 1104-1105 [2005], *lv denied* 6 NY3d 714 [2006]; *Matter of Haas Hill Prop. Owners' Assn. v Zoning Bd. of Appeals of Town of New Baltimore*, 202 AD2d 895, 896-897 [1994]; *see also Matter of Smith v Town of Plattekill*, 13 AD3d 695, 697 [2004] [racetrack was found to be an "amusement or recreation use" under a town's zoning ordinance]).

Petitioners also claim that, in its decision to grant site plan approval,[8] the Planning Board failed to take a hard look at the racetrack and the impact it would have on the surrounding environment as required by SEQRA. "Judicial review of an agency determination under [SEQRA] is limited to whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (*Matter of Residents for Responsible Govt. v Grannis*, 75 AD3d 963, 966 [2010] [internal quotation marks and citations omitted]). Such a decision

---

**8.** As the record is sufficiently developed to assess petitioners' claim regarding the alleged deficiencies in the site plan and SEQRA process, we conclude that judicial economy is best served by our addressing the merits of these claims in the context of this appeal (*see Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs*, 46 AD3d 979, 987 [2007], *lv denied* 10 NY3d 706 [2008]; *compare Matter of Herman v Incorporated Vil. of Tivoli*, 45 AD3d 767, 769 [2007]).

"should be annulled only if it is arbitrary, capricious or unsupported by the evidence" (*Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 231-232 [2007]; *see Matter of Mirabile v City of Saratoga Springs*, 67 AD3d 1178, 1180-1181 [2009]).

After classifying the Wilzigs' proposed use of their property as a SEQRA type I action and declaring that it would be the lead agency for this proposal, the Planning Board identified those areas of the environment that could be adversely affected if a racetrack were to be located on their property (*see* 6 NYCRR 617.2 [u]; 617.4 [b] [2], [3], [6] [i]). It retained the services of a professional engineer, a certified professional planner and a land use attorney and, with their assistance, reviewed a variety of documents, including an environmental assessment statement, site plans, maps, photographs, drawings, as well as technical reports regarding the noise to be generated by the racetrack, and its potential impact on wetlands, wildlife and farming in the area. The Planning Board visited the site, held public hearings and coordinated its review of this proposal with other interested governmental agencies, including the United States Army Corps of Engineers, the New York State Department of Environmental Conservation and the Columbia County Planning Board. As for noise—a primary concern of petitioners—the Planning Board reviewed studies prepared by noise consultants and professional engineers, which concluded that "the track will have a minimal impact upon sound levels and receiving locations." In addition, the Wilzigs agreed not only to restrictions being placed on their use of the racetrack, but also to construct a sound berm on the west side of the racetrack to absorb some of the noise generated by it.[9] Finally, when completing its review, the Planning Board issued a 23-page negative declaration detailing why the racetrack would not have a significant environmental impact on the surrounding community (*see* 6 NYCRR 617.7; *Matter of Citizens for Responsible Zoning v Common Council of City of Albany*, 56 AD3d 1060, 1061-1062 [2008]). In our view, this record establishes that the Planning Board took a "hard look" at those areas that could be implicated by the construction of the racetrack on the Wilzigs' property and satisfied its statutory responsibilities under SEQRA (*see* 6 NYCRR 617.3 [c] [1]; *Matter of Citizens for Responsible Zoning*

9. In addition to banning lighting or any commercial use of the racetrack, the Planning Board, in its approval of the site plan, imposed certain noise monitoring requirements, placed restrictions on the days and hours the track could be in use, limited the number of vehicles that could be on it at any one time (four), and required that all motorcycles use factory-installed exhaust and muffler systems.

*v Common Council of City of Albany*, 56 AD3d at 1061-1062; *Matter of Friends of the Shawangunks, Inc. v Zoning Bd. of Appeals of Town of Gardiner*, 56 AD3d 883, 885 [2008]).

Petitioners also contend that the Planning Board impermissibly issued the functional equivalent of a conditional negative declaration in this SEQRA type I action (*see* 6 NYCRR 617.2 [h]; 617.7 [d]; *Matter of Waste Mgt. of N.Y. v Doherty*, 267 AD2d 464, 465 [1999]). While it is true that a "negative declaration by a lead agency may not be subject to conditions, a type I action subject to SEQRA may be modified during the approval process and still receive a negative declaration" (*Matter of Hoffman v Town Bd. of Town of Queensbury*, 255 AD2d 752, 753 [1998], *lv denied* 93 NY2d 803 [1999]; *see Matter of Merson v McNally*, 90 NY2d 742, 752-753 [1997]). Here, the site plan as originally proposed by the Wilzigs was modified during the review process to address ongoing concerns and, in particular, the noise that would be created by the racetrack's use. These modifications represented a reasonable attempt to address some of these concerns and were "part of the 'give and take' of the application process" (*id.* at 753).

Finally, the Wilzigs ask us to declare that the preliminary injunction was improperly issued and that they are entitled to damages for the loss they sustained while it was in place. They claim that petitioners' request for a preliminary injunction was based solely upon the affirmation of an attorney and was issued prematurely (*see* CPLR 6312). In fact, in support of their application for a preliminary injunction, petitioners submitted, in addition to counsel's affidavit, a verified complaint and numerous exhibits that provided a factual basis for the claims made in their application regarding the racetrack's impact on the surrounding community. Moreover, it was issued after the Planning Board granted site plan approval for the project. For this reason, the preliminary injunction was not premature, nor was it improperly granted. Finally, as a result of the decision reached herein, we need not address the merits of the Wilzigs' challenge to the broadness of the permanent injunction.

Cardona, P.J., Lahtinen, McCarthy and Egan Jr., JJ., concur. Ordered that the appeal from the order is dismissed, without costs. Ordered that the judgment is reversed, on the law, without costs, permanent injunction vacated and petition dismissed.