Matter of Carlson v New York City Council (2024 NY Slip Op 02366)

Matter of Carlson v New York City Council

2024 NY Slip Op 02366

Decided on May 02, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 02, 2024

Before: Webber, J.P., Oing, Rodriguez, Higgitt, Michael, JJ. 

Index No. 5648/22 Appeal No. 2187 Case No. 2023-05566 

[*1]In the Matter of Christina Carlson et al., Petitioners-Respondents,
v
The New York City Council, et al., Respondents-Appellants.

Sylvia O. Hinds-Radix, Corporation Counsel, New York (D. Alan Rosinus, Jr. of counsel), for appellants.
Christiana Carlson, respondent pro se.

Order, Supreme Court, Bronx County (Leticia M. Ramirez, J.), entered on or about July 7, 2023, which, in this hybrid CPLR article 78/declaratory judgment proceeding, granted the petition to annul a determination of respondent New York City School Construction Authority (SCA) dated June 22, 2022, issuing a negative declaration for a proposed school development and remanding to SCA to conduct an environmental impact statement, unanimously reversed, on the law, without costs, the petition denied, and the hybrid proceeding dismissed.
The State Environmental Quality Review Act (SEQRA) requires New York State and local agencies to "review any action that comes before it to determine whether or not it may have a significant adverse environmental impact" (Matter of South Bronx Unite! v New York City Indus. Dev. Agency, 115 AD3d 607, 607 n 1 [1st Dept 2014], lv denied 24 NY3d 908 [2014]; see Environmental Conservation Law § 8-0109[2]; 6 NYCRR [Dept of Environmental Conservation] 617.7[b][3]). As part of this process, agencies classify actions into Type I, Type II, or Unlisted (see South Bronx Unite!, 115 AD3d at 609 n 4). Both Type I and Unlisted actions undergo a similar initial assessment process to determine the necessity for further review in an environmental impact statement (EIS) (6 NYCRR 617.7), but "the fact that an action or project has been listed as a Type I action carries with it the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS" (6 NYCRR 617.4[a][1]).
SEQRA regulations set forth categories of actions that qualify as Type I, including projects of a certain size "occurring wholly or partially within, or substantially contiguous to, any historic building . . . [or] site . . . determined by the Commissioner of the Office of Parks, Recreation and Historic Preservation to be eligible for listing on the State Register of Historic Places" (6 NYCRR 617.4[b][9]), or "occurring wholly or partially within or substantially contiguous to any publicly owned or operated parkland" (6 NYCRR 617.4[b][10]).
SCA classified as Unlisted a proposed public school project to be built at 160 Van Cortlandt Park South, adjacent to Van Cortlandt Park, on a "paved parking area that formerly served" the Visitation of the Blessed Virgin Mary Church complex, which was designated as a site eligible for listing on the State Register of Historic Places. SCA then determined that the project would result in no adverse environmental impact and issued a negative declaration. The City does not dispute that the project formally qualified as Type I based on its proximity to the church complex and park (see 6 NYCRR 617.4[b][9]-[10]). However, "a misclassification does not always lead to the annulment of [a] negative declaration if the lead agency conducts the equivalent of a Type I review notwithstanding the misclassification" (Matter of Williamsville Residents Opposed to Blocher Redevelopment, LLC v Village of Williamsville [*2]Planning and Architectural Review Bd., 208 AD3d 1609, 1610 [4th Dept 2022], lv denied 39 NY3d 912 [2023]; accord Matter of Town of Copake v New York State Off. of Renewable Energy Siting, 216 AD3d 93, 99 [3d Dept 2023]).
Despite the misclassification, SCA conducted the same review it would have for a properly classified Type I action. SCA completed a full environmental assessment form, as required for a Type I action (see 6 NYCRR 617.6[a][2]-[3]), as well as an accompanying environmental assessment statement (EAS). "To overcome [the] presumption" that attaches to Type I actions, an agency, "in a properly completed EAS, [is] obligated to identify the potential adverse environmental impacts, take a 'hard look' at them, and '[make] a reasoned elaboration of the basis for its determination' that there would be no adverse impacts" (Matter of Chinese Staff & Workers' Assn v Burden, 88 AD3d 425, 429 [1st Dept 2011], affd 19 NY3d 922 [2012], quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]).
Here, SCA's EAS took the required "hard look" at potential adverse environmental impacts. The EAS analyzed the potential impact of the proposal across many categories, including land use, open space, light, noise, traffic, parking, water and sewer infrastructure, and neighborhood character, comparing a future with the project to a future without the project. Petitioners do not argue that SCA would have conducted a different analysis had it properly classified the project; rather, they challenge the merits of the analysis, particularly in the areas of traffic and parking. This Court's review is limited to "whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration for its determination" (Matter of Northern Manhattan Is Not for Sale v City of New York, 185 AD3d 515, 517 [1st Dept 2020], lv denied 35 NY3d 918 [2020]). SCA provided reasoned explanations for its determinations, including mitigation proposals, and this Court "may not substitute [its] judgment for that of the agency" nor "weigh the desirability of any action" (South Bronx Unite!, 115 AD3d at 609 [internal quotation marks omitted). Because SCA "conduct[ed] the equivalent of a type I review notwithstanding the misclassification" (Williamsville Residents, 208 AD3d at 1610), the petition should have been denied.
Because petitioners did not cross-appeal the court's denial of their Open Meetings Law claim, we have no jurisdiction to review if here (see Schiano v Marina, Inc., 103 AD3d 462, 464 [1st Dept 2013]; Seldon v Spinnell, 95 AD3d 779, 779 [1st Dept 2012], lv denied 20 NY2d 857 [2013]).
In view of the foregoing, we need not consider the parties' remaining contentions.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 2, 2024