Matter of Prattsburgh Preserv. Alliance Inc. v New York State Off. of Renewable Energy Siting & Elec. Transmission

2026 NY Slip Op 03037

May 14, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Prattsburgh Preservation Alliance Inc., Petitioner,

v

New York State Office of Renewable Energy Siting and Electric Transmission et al., Respondents.

Decided and Entered:May 14, 2026

CV-24-2046

Calendar Date: March 25, 2026

Before: Garry, P.J., Reynolds Fitzgerald, Powers, Mackey And Ryba, JJ.

Wisniewski Law PLLC, Webster (Benjamin E. Wisniewski of counsel), for petitioner.

John J. Sipos, Public Service Commission, Albany (Daniel Becker of counsel), for New York State Office of Renewable Energy Siting and Electric Transmission and another, respondents.

Young/Sommer LLC, Troy (Jessica Ansert Klami of counsel), for Prattsburgh Wind, LLC, respondent.

[*1]

Reynolds Fitzgerald, J.

Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Service Law § 146 [2]) to review a determination of respondent Office of Renewable Energy Siting and Electric Transmission issuing a final siting permit to respondent Prattsburgh Wind, LLC.

In 2019, the Legislature enacted the New York Climate Leadership and Community Protection Act to address the dangers posed by climate change (L 2019, ch 106). In so doing, it set forth a rigorous schedule to achieve zero emissions of electrical energy by 2040 (see Public Service Law § 66-p [2]). In 2020, the Legislature also enacted the Accelerated Renewable Energy Growth and Community Benefit Act, adding Executive Law § 94-c, with its implementing regulations codified in 19 NYCRR part 900, and created the Office of Renewable Energy Siting to ensure that new renewable energy generation projects could be sited in a timely and cost-effective manner, while at the same time ensuring the protection of the environment, taking into consideration all pertinent social, economic and environmental factors (see Executive Law former § 94-c [1]; L 2020, ch 58, part JJJ; Matter of Town of Cambria v New York Off. of Renewable Energy Siting, 228 AD3d 1336, 1337 [4th Dept 2024], lv denied 42 NY3d 912 [2025]; Matter of Town of Copake v New York State Off. of Renewable Energy Siting, 216 AD3d 93, 96 [3d Dept 2023], appeal dismissed 41 NY3d 990 [2024]). In 2024, the Legislature passed the Renewable Action Through Project Interconnection and Deployment Act (L 2024, ch 58, part O). This act consolidates the environmental review, permitting and siting of major renewable facilities and major electric transmission facilities and retitled the Office of Renewable Energy Siting as respondent Office of Renewable Energy Siting and Electric Transmission (hereinafter ORES),FN1 to act as the single forum for the coordinated and timely review of such projects (see Public Service Law § 3-c). Executive Law § 94-c was repealed and replaced by a new article VIII of the Public Service Law (see Public Service Law §§ 136-148), all regulations formally codified in 19 NYCRR part 900 were transferred to 16 NYCRR part 1100 (L 2024, ch 58, part O, § 4) and the functions, powers, duties and obligations of the Office of Renewable Energy Siting under Executive Law former § 94-c were continued through ORES (see Public Service Law § 3-c [2] [d]).

Pursuant to this evolving statutory and regulatory scheme, respondent Prattsburgh Wind, LLC (hereinafter PW), in September 2022, applied to ORES for a major renewable energy facility permit to construct and operate a 147-megawatt wind energy facility, consisting of 36 wind turbines, in the Towns of Prattsburgh, Avoca, Cohocton, Howard and Wheeler in Steuben County. After PW supplemented its initial application pursuant to several of ORES's requests, ORES determined that PW's application was complete and issued a draft siting permit in December 2023. ORES issued a combined notice scheduling [*2]a public comment period and setting forth deadlines for the submission of issue statements and petitions for party status. Thereafter, a public comment hearing was held.

In November 2022, petitioner filed a request for full party status FN2 citing several procedural concerns and raising issues pertaining to bird/bat conservation, the general method used by ORES in calculating setback standards and the study used to determine a noise limit. Pursuant to 16 NYCRR 1100-8.4 (c) (2) (ii), a petition must include an offer of proof specifying the petitioner's expert witness, his or her qualifications, the nature of the evidence it expects to present, and the grounds upon which the assertion is made with respect to the issues raised. The Administrative Law Judges (hereinafter ALJ) issued a determination denying petitioner's request for full party status, concluding, as relevant here, that petitioner failed to raise any substantive and significant issues as its objections were not site specific, but rather general and conclusory in nature, and further that it failed to establish how the background of its expert qualified him to act as an expert in the field of wind turbine safety. The determination was affirmed by the Executive Director of ORES. In September 2024, ORES issued a siting permit to PW, and petitioner thereafter commenced the instant proceeding.

Any party aggrieved by the issuance or denial of a siting permit may seek judicial review by this Court as to "whether the decision and opinion of ORES are: (a) [i]n conformity with the constitution, laws and regulations of the state and the United States; (b) [s]upported by substantial evidence . . . ; (c) [w]ithin the statutory jurisdiction or authority of ORES . . . ; (d) [m]ade in accordance with procedures [in the statute] or established by rule or regulation . . . ; (e) [a]rbitrary, capricious or an abuse of discretion; or (f) [m]ade pursuant to a process that afforded meaningful involvement of citizens affected by the facility or project regardless of age, race, color, national origin and income" (Public Service Law § 146 [3]). "In a proceeding seeking judicial review of an administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious" (Matter of Beer v New York State Dept. of Envtl. Conservation, 189 AD3d 1916, 1918 [3d Dept 2020] [internal quotation marks, brackets and citation omitted]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Clean Air Action Network of Glens Falls, Inc. v Town of Moreau Planning Bd., 235 AD3d 1124, 1126 [3d Dept 2025] [internal quotation marks and citations omitted]). "Furthermore, where, as here, the judgment of the agency involves factual evaluations in the area of the agency's expertise and is supported by the record[*3], such judgment must be accorded great weight and judicial deference" (Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d 123, 129 [3d Dept 2011] [internal quotation marks and citation omitted], lv denied 19 NY3d 807 [2012]).

Initially, petitioner's multiple challenges asserting that the issuance of the siting permit is arbitrary and capricious, an abuse of discretion, not based on substantial evidence, and violates ORES's regulations and prior siting board decisions because the permit does not differentiate between setbacks and noise-exposure limits for seasonal and part-time residences, as opposed to full-time residences, are unpreserved as these arguments were not presented in its petition for full party status (see Matter of Board of Educ. of the Newburgh Enlarged City Sch. Dist. v Public Empl. Relations Bd. of the State of N.Y., 243 AD3d 1194, 1197 [3d Dept 2025]; Matter of Lane Constr. Corp. v Cahill, 270 AD2d 609, 611 [3d Dept 2000], lv denied 95 NY2d 765 [2000]). We are unpersuaded by petitioner's argument that the issue is preserved for review because a third party (Town of Prattsburgh) set forth this argument in its request for full party status and that the Town's request is contained in the record. "Aggrievement is a central and necessary component to invoke this Court's jurisdiction, and only an aggrieved party may take an appeal to this Court" (Santiago v General Motors LLC, 232 AD3d 1173, 1174 [3d Dept 2024] [internal quotation marks and citations omitted]). A party is aggrieved when the court denied, in whole or in part, such party's requested relief. Here, petitioner is not aggrieved in this regard as it did not affirmatively seek this relief (see CPLR 5511; Santiago v General Motors LLC, 232 AD3d at 1174; Porco v Lifetime Entertainment Servs., LLC, 176 AD3d 1274, 1275-1276 [3d Dept 2019]).

Petitioner next contends that ORES arbitrarily denied its request for full party status and an adjudicatory hearing because it raised substantive and significant issues of fact and law with an offer of proof. The determination regarding whether an issue is adjudicable, thus requiring a hearing, is governed by 16 NYCRR 1100-8.3 (d). An issue raised by a potential party is adjudicable if it is "both substantive and significant" (16 NYCRR 1100-8.3 [d] [1] [iii]). "An issue is substantive if there is sufficient doubt about the applicant's ability to meet statutory or regulatory criteria applicable to the project, such that a reasonable person would require further inquiry" (16 NYCRR 1100-8.3 [d] [2]). In determining whether a substantive issue exists, "the ALJ shall consider the proposed issue in light of the application and related documents, the standards and conditions, or draft siting permit, the statement of issues filed by the applicant, the content of any petitions filed for party status, the record of the issues conference, and any subsequent written or oral arguments authorized by the ALJ" (16 [*4]NYCRR 1100-8.3 [d] [2]). "An issue is significant if it has the potential to result in the denial of a siting permit, a major modification to the proposed project, or the imposition of significant permit conditions in addition to those proposed in the draft siting permit, including uniform standards and conditions" (16 NYCRR 1100-8.3 [d] [3]). An offer of proof must "specify[ ] the witness(es), each witness's qualification, the nature of the evidence the person expects to present, and the grounds upon which the assertion is made with respect to each issue identified" (16 NYCRR 1100-8.4 [c] [2] [ii]). The burden of persuasion is on the potential party seeking party status to demonstrate that the issue is both substantive and significant (see 16 NYCRR 1100-8.3 [d] [4]).

Contrary to petitioner's contention, ORES's determination that petitioner failed to raise any substantive and significant issues is supported by substantial evidence in the record and is not arbitrary, capricious or an abuse of discretion (see Public Service Law § 146 [3]; Matter of Town of Cambria v New York Off. of Renewable Energy Siting, 228 AD3d at 1339; Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d at 129). All issues, including noise modeling and setback requirements, were raised by petitioner in purely general fashion; petitioner failed to allege any site-specific arguments or allegations. And while petitioner did offer a purported expert, his report was merely a generalized critique of setback standards and did not include site- or project-specific factual assertions demonstrating noncompliance. Moreover, petitioner failed to demonstrate how its expert's background in astrophysics qualified him as an expert in wind turbine safety or that his methodologies were relied upon by other wind turbine safety experts (see generally McKee v State of New York, 75 AD3d 893, 894 [3d Dept 2010]; Gernat v State of New York, 23 AD3d 1015, 1015 [4th Dept 2005]; Rosen v Tanning Loft, 16 AD3d 480, 481 [2d Dept 2005]).

Petitioner also asserts that the issuance of the siting permit was not made in a manner that afforded meaningful involvement of citizens affected by the facility. Public Service Law mandates that an ORES decision be "[m]ade pursuant to a process that afforded meaningful involvement of citizens affected by the facility or project regardless of age, race, color, national origin and income" (Public Service Law § 146 [3] [f]). Petitioner's claim lacks merit. ORES issued a notice setting forth deadlines for public comments, a public comment hearing and a deadline for filing petitions seeking party status. The public comment hearing held in February 2024 was well attended, and ORES received a substantial number of written public comments. Additionally, PW coordinated with affected municipalities and members of the community, met with relevant stakeholders and held an additional public information meeting in April 2022. PW further scheduled [*5]open house meetings, set up a project website, a toll-free telephone number and an email address for stakeholders and other entities to relay their questions or comments. Thus, the record is replete with documentation and evidence pertaining to the public's involvement in the issuance of the siting permit and reflects consistent and meaningful public involvement in the underlying proceeding (see Matter of Broome County Concerned Residents v New York State Bd. on Elec. Generation Siting & the Envt., 200 AD3d 26, 43 [3d Dept 2021]). To the extent not expressly addressed herein, we have examined any further claims by petitioner and found them to lack merit.

Garry, P.J., Powers, Mackey and Ryba, JJ., concur.

ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1

The office was formerly operating under the auspices of the Department of State and has now been transferred to the Department of Public Service.

Footnote 2

The initial filing was in November 2022, but it was not fully posted until November 2023. A second filing was submitted in February 2024.